R. L. BROWN ET AL. v. AMERICAN FREEHOLD LAND MORTGAGE
COMPANY OF LONDON, LIMITED, ET AL.

### No. 1321. Decided May 23, 1904.

#### 1.—Conspiracy—Unlawful Act—Motive.

A combination to destroy one's business, for the purpose of securing
advantage to the conspirators, is not actionable where the end is sought by
no unlawful means, nor is it rendered actionable by the existence of malice
or wrong motive so long as the means remain lawful, but it becomes so
when the means resorted to are false representations as to the solvency,
honesty, etc., of the party sought to be injured. (Pp. 609-610.)

#### 2.—Same—Pleading.

Petition alleging a combination of defendants to destroy plaintiff's busi-
ness and divert the business connections and benefits thereof to the con-
spirators by circulating false statements as to plaintiff's solvency, honesty
and faithful conduct of affairs intrusted to him held to state a cause of
action.   (Pp. 606-609.)

#### 3.—Same—Limitation.

An action for destroying plaintiff's business and business connections by
conspiring to circulate false reports as to his solvency, honesty and faithful
conduct of affairs intrusted to him, is not barred by limitation in one year.
(P. 611.)

Questions certified from the Court of Civil Appeals for the Third
District, in an appeal from McLennan County.

*Fiset, Miller & McClendon,* for appellant.—The theory of the peti-
tion is sustained in the following cases: Haldeman v. Martin, 10 Pa.
St., 369; Vanhorn v. Vanhorn, 52 N. J. L., 284; Id., 53 N. J. L., 514;
Id., 56 N. J. L., 318; Webb v. Drake, 52 La. Ann., 290; Olive v. Van-
patten, 7 Texas Civ. App., 630; 1 Texas Civ. App., 520; 2 Texas Civ.
App., 79; Wildee v. McKee, 56 Am. Rep., 271; State v. Hickline, 32
Am. Rep., 198; Rourke v. Elk Drug Co., 77 N. Y. Supp., 373; Hood v.
Palm, 8 Barr, 237; Riding v. Smith, 1 L. R. Ex. Div., 91; Gregory
v. Brunswick, 6 M. & G., 205; 2 Hilliard on Torts, 444, 558; Town-
shend on Slander, 4 ed., sec. 118, note 3.

The essential basis of plaintiffs' case is that a person has a right
under the law, as between himself and other persons, to pursue his
calling or business without interference or obstruction from others, and
that an infringement of this right by others is an illegal act, the same
as a violation of the rights of a person's property, person or reputation.
In other words, the right of earning a livelihood is a distinct right and
is as zealously guarded as any other legal right.  This right may be
violated in many different ways by one person or a combination of
persons.   Raymond v. Yarrington, 73 S. W. Rep., 803, 96 Texas, 443;
Read v. Association, King's Bench Div. 1902, vol. 2, pp. 88, 732; Delz
v. Winfree, 80 Texas, 400; Olive v. Van Patten, 7 Texas Civ. App.,
630; International & G. N. Ry. Co. v. Greenwood, 2 Texas Civ. App.,
80; Plant v. Woods, 51 Law. Rep. Ann., 339; Van Horn v. Van Horn,
52 N. J. Law, 284, 53 N. J. Law, 514, 56 N. J. Law, 318; Riding v.
Smith, 1 L. R. Exch. Div., 91; Rourke v. Elk Drug Co., 77 N. Y. Supp.,

373; Morrasse v. Brochu, 8 Law. Rep., Ann., 524; Gregory v. Brunswick, 6 M. & G., 205; Wildee v. McKee, 56 Am. Rep., 271; Webb's Pollock on Torts, p. 406, and American note; Townshend on Slander, 4 ed., sec. 118, and note 3; Keeble v. Hickeringill, 11 East, 573; Carrington v. Taylor, 11 East, 571; Guntor v. Astor, 4 Moore, 12; Tarleton v. McGawley, Peake, 270; Dreux v. Domec, 18 Cal., 83; Davenport v. Lynch, 51 N. C. (6 Jones Law), 545; Smith v. Nippert, 76 Wis., 86; Phelps v. Goddard, 4 Am. Rep., 720; Raleigh v. Cook, 60 Texas, 438; Carew v. Rutherford, 8 Am. Rep., 287; Jones v. Baker, 7 Cow., 445; Old Dominion S. S. Co. v. McKenna, 30 Fed. Rep., 48, 62 Fed. Rep., 45; Farmers Loan and T. Co. v. Northern Pac. R. R. Co., 60 Fed. Rep., 803; Sherry v. Perkins, 147 Mass., 212; Mapstrick v. Ramge, 9 Neb., 390; Casey v. Cincinnati Typo. Union No. 3, 12 Law. Rep. Ann., 193; Lucke v. Clothing C. and T. A., 39 Am. St. Rep., 421; Ryan v. Burger H. B. Co., 59 Hun, 625; Buffalo L. O. Co. v. Standard Oil Co., 106 N. Y., 669; Dueber W. Mfg. Co. v. E. Howard W. & C. Co., 24 N. Y. Supp., 647; Webb v. Drake, 52 La. Ann., 290; Gore v. Condon, 39 Atl. Rep., 1044; Doremus v. Hennessy, 62 Ill. App., 391; Lucke v. Clothing C. and T. Assembly, 77 Md., 396; Chipley v. Atkinson, 23 Fla., 206; 35 Albany Law Journal, p. 224; McCauley v. Tierney, 61 Am. St. Rep., 771; Chambers v. Baldwin, 34 Am. St. Rep., 165; West Va. T. Co. v. Standard Oil Co., 88 Am. St. Rep., 895; Adler v. Fenton, 24 How., 411; Lincoln v. Claflin, 7 Wall., 132, 137; Brown Hardware Co. v. Indiana Stove Works, 73 S. W. Rep., 800, 96 Texas, 453; Brown Hardware case, 69 S. W. Rep., 808.

The appellees insist that all of the alleged illegal acts done by them more than a year before the filing of the petition were barred by limitation. A suit on a conspiracy carried out by illegal means sets up a distinct cause of action. The means employed may each give rise to separate suits, but if they are steps towards a consummated or a completed plan or scheme to injure, the injured party may ignore the separate causes of action and sue for his entire damages caused by all the different illegal acts. The plaintiffs in the suit at bar alleged that the defendants formed a scheme to ruin them in business and alleged many acts done towards that end. The plaintiffs could have sued upon these separate acts or in one suit embraced them all, provided the acts were parts of the scheme. For instance, if the scheme had been carried out by defendants by slanders against plaintiffs, malicious prosecutions, assaults and batteries, false and malicious lunacy proceedings instituted against them, illegal violent attempts in front of their place of business calculated to frighten away customers, and enticing away their employes and maliciously inducing the companies plaintiffs represented to break their contracts with plaintiffs, the plaintiffs could, upon the consummation of the scheme, have sued in one cause of action, alleging that there was an illegal purpose to ruin them in business by these various illegal means. If the statute of limitation had been different as to each of these illegal acts, which statute would have applied to the

conspiracy suit? Would it not be absurd to say that a different statute would apply to different parts of the same suit? The damages would be the result not of any one of the illegal acts but of all of them. It would be impossible to separate the damages caused by one of the acts from that caused by the other. The final result would be the ruin of the plaintiff's business not due to any one separate act but to all of them together. The cause of action would be a single cause of action. It would be governed by different rules of pleading, different evidence and a different measure of damages from those applicable to the several causes of action if sued upon separately. Northern Pac. Ry. Co. v. Kindred, 14 Fed. Rep., 81; Barron v. P. G. G. Co., 7 Ohio N. P., 528; Bingham v. Lipman W. & Co., 67 Pac. Rep., 98; Oliver v. Perkins, 92 Mich., 319; Rice v. Coolidge, 121 Mass., 393, 23 Am. Rep., 279; Dodge v. Bradstreet, 59 How. Pr., 104; State v. Howard, 129 N. C., 657; Haldeman v. Martin, 10 Barr, 369; State v. Hickline, 32 Am. Rep., 198; Van Horn v. Van Horn, 56 N. J., 318; Fisher v. Schuri, 56 N. W. Rep., 527; Murray v. McGarigle, 34 N. W. Rep., 528; Jones v. Morrison, 16 N. W. Rep., 857; United States v. Greene, 115 Fed. Rep., 350; Wootten case, 29 Fed. Rep., 702; Owen case, 32 Fed. Rep., 534; McCord case, 72 Fed. Rep., 163.

In addition, we submit the following propositions and authorities: It is alleged in plaintiffs' petition that the defendants conspired together to break the plaintiffs up in business, and that some of the means employed were false, fraudulent and malicious statements concerning plaintiffs and their business. Even in some of the cases cited by appellees to show there is no cause of action it is held that a conspiracy to injure one in business by such alleged means is actionable. West Va. Transportation Co. v. Standard Oil Co., 56 Law. Rep. Ann., 810; McCauley v. Tierney, 37 Law. Rep. Ann., 455.

Intent to ruin a rival and using malicious means are actionable. Bowen v. Hall, L. R. 6 Q. B. Div., 333; Delz v. Winfree, 80 Texas, 400, 16 S. W. Rep., 111; Olive v. Van Patten, 7 Texas Civ. App., 630, 25 S. W. Rep., 428; Van Horn v. Van Horn, 52 N. J. L., 284, 10 Law. Rep. Ann., 185, 20 Atl. Rep., 485; Buffalo Lubricating Oil Co. v. Standard Oil Co., 106 N. Y., 669, 12 N. E. Rep., 825; State ex rel. Watson v. Standard Oil Co., 49 Ohio St., 137, 15 Law. Rep. Ann., 145, 30 N. E. Rep., 279. For a full and satisfactory discussion and citation of cases on conspiracies to injure the public by monopolies or the individual in his business, see the recent case decided by the Georgia Supreme Court of Brown v. Jacobs P. Co., in 57 Law. Rep. Ann., 547, and note on that case. Said opinion beginning at the second column in page 552 is especially applicable. See also: State v. Stewart, 59 Am. Rep., 710; Quinn v. Leathem A. C. (1901), p. 529, 530. Dissenting opinion in National P. Assn. v. Cumming, 58 Law. Rep. Ann., beginning near the bottom of page 145 to the end of the opinion on page 148; Elmer v. Fessenden, 5 Law. Rep. Ann., 724, and on the question of motive, Tasker v. Stanley, 10 Law. Rep. Ann., 468, and the

folowing. authorities: Barnes v. Allen, 1 Abb. App. Dec., 111; Hutcheson v. Peck, 5 Johnson, 196; Modisett v. McPike, 74 Mo., 636, 648; Rinehart v. Bills, 82 Mo., 534, 537; Pollock on Torts, 2 ed., 479, 480; Bowen v. Hall, 6 Q. B. Div., 333, 338, 344.

Merely to persuade a person to refuse to deal with another may not be wrong in law or in fact; but if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrongful act, and therefore an actionable act if injury follows from it. Bowen v. Hall, L. R. 6 Q. B. Div., 338; Mogul S. S. Co. v. McGregor, L. R. 23 Q. B. Div., 598; Perkins v. Pendleton, 90 Me., 166, 38 Atl. Rep., 96; Chipley v. Atkinson, 23 Fla., 206, 1 So. Rep., 934; Angle v. Chicago St. P. M. & O. Ry. Co., 151 U. S., 1, 38 L. ed., 55, 14 Sup. Ct. Rep., 240; Nashville C. & St. L. Ry. Co. v. McConnell, 82 Fed. Rep., 65; Jones v. Stanley, 76 N. C., 355; Haskins v. Royster, 70 N. C., 601, 16 Am. Rep., 780; Moran v. Dunphy, 177 Mass., 485, 52 Law. Rep. Ann., 115, 59 N. E. Rep., 125; Rice v. Manley, 66 N. Y., 82, 23 Am. Rep., 30; Rich v. New York C. & H. R. R. Co., 87 N. Y., 399; Benton v. Pratt, 2 Wend., 385, 20 Am. Dec., 623; Taff Vale R. Co. v. Amalgamated Soc. (1901), A. C., 431; Winter v. Hamm, 5 N. Y. Civ. Proc. Rep., 196; Van Aernam v. Bleistein, 102 N. Y., 360, 7 N. E. Rep., 537, affirming 32 Hun, 316; Cutting v. Marlor, 78 N. Y., 454, affirming 17 Hun, 573; Rawls v. Deshler, 3 Keyes, 572; Peterson v. Western U. Tel. Co., 75 Minn., 368, 43 Law. Rep. Ann., 581, 77 N. W. Rep., 985; Manasha v. Royal Ben. Soc., 21 Misc. Rep., 474, 47 N. Y. Supp., 629; Mott v. Consumers Ice Co., 73 N. Y., 547; Lucke v. Clothing Cutters and T. Assembly No. 7507, K. of L., 77 Md., 405, 19 Law. Rep. Ann., 408, 26 Atl. Rep., 505; Emack v. Kane, 34 Fed. Rep., 47; Davis v. Zimmerman, 91 Hun, 489, 36 N. Y., Supp., 303; Sun Printing and Pub. Assn. v. Delaney, 48 App., Div., 623, 62 N. Y. Supp., 750.

On the proposition that the statute of limitation as to slanders does not apply because the series of acts constituting the conspiracy is to be regarded as constituting a single transaction characterized and vitiated by the general purpose which actuated them, we cite the following additional authorities: Berry v. House, 1 Texas Civ. App., 562; City of Houston v. Houston E. & W. T. Ry. Co., 63 S. W. Rep., 1056, 26 Texas Civ. App., 228, Am. and Eng. Enc. of Law, 2 ed., 194, 195; Von Koehring v. Witte, 40 S. W. Rep., 63, 15 Texas Civ. App., 646; Quinn v. Leathem A. C. (1901), pp. 529, 530.

*Gano, Gano & Gano* and *Sleeper & Kendall,* for appellees.—[From brief.]—When the object of the conspiracy is not unlawful, i. e., actionable, nor the means to accomplish the object unlawful, i. e., actionable—no cause of action exists. The conspiracy to break plaintiffs up in business was not of itself unlawful in purpose, and the acts done were not

shown upon the face of the petition to be actionable. McCauley v. Tierney, 61 Am. St. Rep., 770; Delz v. Winfree, 80 Texas, 400.

The only effect of the conspiracy is to show who are the parties to the unlawful act, and the statute, therefore, begins to run from the time of its commission. If the conspiracy, however, constituted a part of the tort, it would be complete when the first act was committed; and the statute would run from that date.

The fact that all these alleged unlawful acts complained of in the paragraph cited are barred by the statute of limitation of this State would seem to be inevitable, whether we consider the conspiracy as entering into and constituting an element of the tort complained of, or as having nothing more to do with it, or as serving no other purpose than to indicate the parties jointly involved in its commission. If the former, then the statute begins to run the moment the cause of action accrues; and the conspiracy being an agreement to do an unlawful act by lawful means, or a lawful act by unlawful means, and the commission of some act in furtherance of the agreement—the cause of action accures the moment that this is done; and the statute begins to run from the date of the commission of the first act in furtherance of the agreement, the cause of action being then complete. If the latter, then we must regard it in the same light as if the plans were formed and unlawful act or acts were committed by one man (for if not actionable when committed by one man, they would not be actionable when committed by many). If the unlawful means consisted of a number of libels and slanders, as charged in this case, and were uttered by one man in furtherance of an individual plan to secure a rival's custom and trade—there could be no doubt that each of the libels and slanders would be separate torts, and that the statute would run as to each libel and slander from the date of its utterance; and the conspiracy being no part of the tort, could not possibly affect in any way the running of the statute. It would merely show who were the parties to each libel and slander at the time when it is written or spoken, as the case may be.

[From argument on certified questions.]—We insist that to damage a man in his business and break him up and run him out of business, with the motive alleged, is not unlawful—because these things may be done by lawful means in the struggle for supremacy among competitors in trade.

Our contention is well supported by authority. A conspiracy is defined to be a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. 6 Am. and Eng. Enc. of Law, 830.

There can be no conspiracy to do that which is lawful, although it be done maliciously and operate to injure another in person or property. 6 Am. and Eng. Enc. of Law, 2 ed., 872, 875; Cooley on Torts, 93; Jenkins v. Fowler, 24 Pa., 308; Raycroft v. Tayntor, 68 Vt., 219, 35 Atl. Rep., 53, 33 Law. Rep. Ann., 225, 54 Am. St. Rep., 883; Phelps

v. Nowlen, 72 N. Y., 39, 28 Am. Rep., 93; Glendon Iron Co. v. Uhler, 75 Pa., 467, 15 Am. Rep., 599.

It is not an unlawful purpose for two or more to conspire to get the business of a competitor away from him or to break up a competitor in business, and no action will lie in favor of one injured in the carrying out of such a conspiracy. Delz v. Winfree, 80 Texas, 400; Mogul Steamship Co. v. McGregor, 61 L. J. R., 295; L. R. App. Cas. (1892), 25; McCauley v. Tierney, 61 Am. St. Rep., 770; W. Va. Tr. Co. v. Standard Oil Co., 88 Am. St. Rep., 895.

In a civil action the allegation of conspiracy adds nothing to the plaintiffs' cause of action unless such conspiracy is indictable and the subject of a criminal prosecution. Bishop on Noncon. Law, secs. 71, 355, 361; Mogul Steamship Co. v. McGregor, 61 L. J. R., 295; Seveninghaus v. Beckman, 36 N. E. Rep. (Ind.), 930; Wildee v. McKee (Pa. St.), 56 Am. Rep., 271; Rourke v. Elk Drug Co., 77 N. Y. Supp., 373; Hood v. Palm, 8 Barr, 237; Delz v. Winfree, 80 Texas, 400.

When the purpose of a conspiracy is not unlawful and a conspiracy to accomplish such lawful purpose is alleged to have been carried out by unlawful means not the subject of indictment or criminal prosecution, the unlawful means become the gist of the action, and the pleadings which set out the same are governed by the rules which pertain to the class to which the wrongs constituting the wrongful means belong; and the allegation of conspiracy does not change or alter the character of the action. Bishop on Noncon. Law, 361; Severinghaus v. Beckman (Ind.), 36 N. E. Rep., 930; Porter v. Mack (W. Va.), 40 S. E. Rep., 459; Noonan v. Orton (Wis.), 17 Am. Rep., 441; Dudley v. Briggs (Mass.), 55 Am. Rep., 494.

An indictment will lie at common law (1) for a conspiracy to do an act not illegal nor punishable if done by an individual, but immoral only; (2) for a conspiracy to do an act neither illegal nor immoral in an individual, but to effect a purpose which has a tendency to prejudice the public; (3) for a conspiracy to extort money from another or to injure his reputation by means not indictable if practiced by an individual, as by verbal defamation, and whether it be to charge him with an indictable offense or not; (4) for a conspiracy to cheat and defraud a third person accomplished by means of an act which would not in law amount to an indictable cheat if effected by an individual; (5) for a malicious conspiracy to impoverish or ruin a third person in his trade or profession; (6) for a bare conspiracy to cheat or defraud a third person, although the means of effecting it should be not determined on at the time; (7) a conspiracy is a substantive offense, and punishable at common law, although nothing be done in execution of it. 8 Cycl. of Law and P., 627; State v. Buchanan (Md.), 9 Am. Dec., 561.

Since the allegation of conspiracy adds nothing to the plaintiff's case, but is to be treated as surplusage, it follows that the plaintiff's petition leaving out the conspiracy must make a good case against one, or it will be bad as to all, for the gravamen of the action, whether single or

several, must be set out with the same certainty as in an action against a single defendant for the same character of action, whether the same be libel, slander or other tort. Where several grounds of action are included in the same petition, each must be set out with the same particularity as though they were contained in separate declarations. "In short, they must each furnish a sufficient ground for judgment against a single defendant." Porter v. Mack, 40 S. E. Rep., 459; Noonan v. Orton, 34 Wis., 259.

If we are correct in our contention that the conspiracy gave rise to no cause of action, plaintiffs ought not in this court to be heard to contend that they could recover for the libels and slanders alleged in said petition, for where a pleading may be construed as presenting two or more theories the theory adopted by the trial court and the parties will be followed by the appellate court. 2 Cycl. Law and Pr., 670; Anderson Works v. Meyer, 44 N. E. Rep., 193; Cleveland & C. Ry. Co. v. DeBolt, 37 N. E. Rep., 737.

[From motion for rehearing on certified questions.]—This is a new and startling statement of the joint liability of parties to damage suits, and is contrary to the universally accepted theory "that persons who act separately and independently, each causing injury, can not be sued jointly even though the injuries may have been precisely similar in character and inflicted at the same time." 15 Enc. of Pl. and Prac., 562; Bard v. Yohn, 26 Pa. St., 482; Little Schuylkill & C. Co. v. Richards, 98 Am. Dec., 209; Wert v. Potts, 76 Iowa, 612; La France v. Krayer, 42 Iowa, 143; Powell v. Thompson, 80 Ala., 51; Herron v. Hughes, 25 Cal., 555; Keyes v. Little, 53 Cal., 724; Miller v. Highland Ditch Co., 87 Cal., 430; Harriott v. Plimpton, 44 N. E. Rep., 992.

Is this not after all begging the question? If the means used, however unfair, are not actionable under well defined principles of law, they can not constitute the basis of a suit. We submit with all candor to the court that the position taken by us—to the effect that when the object of conspiracy is not actionable, nor the means to accomplish the object actionable, no cause of action exists—is unanswerable. Delz v. Winfree, 80 Texas, 400; International & G. N. Ry. Co. v. Greenwood, 2 Texas Civ. App., 80; Adler v. Fenton, 24 How., 411; West Va. Transportation Co. v. Standard Oil Co., 88 Am. St. Rep., 895; McCauley v. Tierney, 61 Am. St. Rep., 771; Chambers v. Baldwin, 34 Am. St. Rep., 165; 6 Am. and Eng. Enc. of Law, 2 ed., 73.

The destruction of the plaintiffs' business is not, as has been stated by this court, of itself actionable; and if the unlawful means used, i. e., if the acts of the defendants, must be considered as constituting the basis of action, then these acts must, where they result in damage, give the plaintiffs a cause of action, or else plaintiffs are absolutely without any cause. If these acts violated any right and resulted in damage, then the statute of limitation applicable to such character of acts must be applied to this case; and the plaintiffs can not avoid the running of this statute by claiming that the whole damage had not resulted from any

one of the acts, or that the. damage done by any act did not result at the time. Houston Waterworks v. Kennedy, 70 Texas, 233; United States v. Wooten, 29 Fed. Rep., 702; United States v. Owen, 32 Fed. Rep., 534; United States v. McCord, 72 Fed. Rep., 159.

There may be some reasons for making a distinction between statutes of limitations applicable to acts of defendants, where those acts are on the one hand simply libels and slanders, and, on the other, a conspiracy to accomplish a result by means of such utterances, in those States where the conspiracy is a recognized cause and basis of action; but it would seem that in those States where this is not true, but where the conspiracy agreement is merely material for the purpose of showing who are the parties to the particular act of the defendants, such a distinction is without excuse.

We submit that the answers to the certified questions in this case are calculated to produce widespread litigation throughout the State, and stifle competition, by obliterating the well marked line between acts which are actionable and those which are nonactionable under the well settled principles of legal science; and to do a great injustice to the defendants in the present case.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals of the Third District has submitted the following statement and questions in the above cause:

"R. L. Brown and J. Gordon Brown sued the American Freehold Land Mortgage Company of London, Limited, R. B. King and T. Mallinson, to recover $150,000 damages. The trial resulted in a verdict and judgment for the plaintiffs for $100, and they have appealed.

"The appellees have filed cross-assignments, and having reached the conclusion that appellants' brief points out reversible error, we desire to certify to the Supreme Court certain questions presented by the cross-assignments, which questions are material to the rights of the parties and to a proper disposition of the case.

"The plaintiffs' original petition was filed June 27, 1901, and the amended petition, on which the plaintiffs went to trial, was filed February 23, 1903. The latter petition reads as follows:" [From the petition certified we condense the allegations which we deem necessary to answer the questions submitted, as follows]: After making the formal allegations of the parties, their residences, etc., the petition alleges in substance that R. L. Brown and J. G. Brown, under the firm name of Brown Bros., had established at Austin and at the city of Waco a business as loan agents, which transacted business throughout the State, and had, from 1888 to the year 1898, conducted the business of lending money on behalf of foreign corporations, receiving for their services a per cent of the annual interest as it accrued upon the loans made; that the plaintiffs had established a good reputation as business men for honesty, promptness and reliability, and as men who could command money for lending to those who might apply to them to borrow, and, in the trans-

action of the business of loan agents, had established business relations with many people in Texas who were borrowers of money, who had confidence in plaintiffs and would have continued to do business with them except for the interference of defendants. Plaintiffs allege that they were appointed agents of the American Freehold Land Mortgage Company of London, Limited, hereafter called the defendant company, in the year 1888 and continued to transact business as such agents for that company until the year 1898, during which time a profitable business was done for the said defendant company, from which the plaintiffs received annually $8000.

The petition alleges that the plaintiffs were, at the same time, agents for the English and Scottish Land Mortgage and Investment Company, Limited, a foreign corporation, which business was satisfactory to the said corporation and was profitable to it and plaintiffs until said English and Scottish company was induced by the false representations of defendants to take the business from plaintiffs.

It is alleged, that, in the year 1898, the defendant company determined to change the manner of doing business in Texas so as to pay salaries instead of commissions as it had done with the plaintiffs, and determined that it would secure for itself the agency for the English and Scottish Land Mortgage and Investment Company, Limited, which the plaintiffs then had and would have continued to hold but for the wrongful acts of the defendants. It is alleged that by reason of the transactions which the plaintiffs had carried on as agents, lending money for the said two corporations as well as for others, they had established a valuable business, having loaned money to many persons, which loans were about to mature, and said persons would require to renew the loans or to borrow money to pay them; that plaintiffs would have been able to control that business as agents of other companies after the agencies for the said two companies had been taken from them, and to prevent this and to secure the plaintiffs' business for themselves the defendants, the said defendant company, R. B. King and T. Mallinson, who, are alleged to be agents of defendant company, fraudulently and maliciously combined, confederated and conspired together for the purpose of weakening and destroying plaintiffs' business influence, financial credit and standing, to break them up and run them out of business, and, for the purpose of causing the English and Scottish company to transfer its business to the defendant company, the defendants made certain false and malicious representations to the said English and Scottish company as to the management of its business by the plaintiffs, which caused the said last named company to take the business agency in Texas from the plaintiffs, and that by means of the fraudulent combination and their acts done and performed, alleged specifically in the petition, the said defendants succeeded in preventing the plaintiffs from continuing their business with a large number of their clients who needed to borrow money and whose loans in the other companies were maturing, and, by the fraudulent and false representations and manner alleged in the

petition, defendants prevented the said persons from making application to the plaintiffs for such loans and succeeded in causing the English and Scottish company to take its business from the plaintiffs, and thereby weakened and in a large measure destroyed the business of the plaintiffs. It is alleged in the petition that the defendants, for the wicked, malicious and fraudulent purpose before charged, circulated and published reports and statements to the effect that the plaintiffs were insolvent and unable to accommodate their customers who might apply for loans, and by the various methods alleged interfered and prevented many persons from applying to the plaintiffs for loans; also, by such means and by such false and fraudulent representations, prevented the plaintiffs from acquiring agencies for other companies, which otherwise they could have done, so as to enable them to furnish money to those persons who applied to them for loans. The petition alleges that the business of the agency made a return annually of $15,000 profits, and would have continued for many years to produce that amount if it had not been for the wrongful and malicious acts done and performed by the defendants; but that by their interference with plaintiffs' business and the circulation and publication of false and fraudulent statements with reference to their honesty, their business integrity and solvency, the plaintiffs were damaged in the sum of $150,000. The petition alleges with great particularity and in detail the many acts, statements and publications done and performed by the defendants for the purpose of accomplishing the conspiracy charged against them which it is unnecessary for us to set out. This statement of the contents of the petition will be a sufficient basis for the answer to the questions hereinafter copied.

"The trial court sustained exceptions to the sixth, seventh and twenty-third paragraphs of the petition, overruled other exceptions, and held that the petition stated a cause of action upon a conspiracy to injure the plaintiffs in their business, and submitted the case to the jury upon that issue.

"Appellees' first cross-assignment of error complains of the action of the court below in overruling their special exception number 23, which exception was both general and special and challenged the petition for the reason, among others, that it showed no cause of action against the defendants. Under the assignment referred to, appellees contend that when the object of a conspiracy is not actionable, nor the means to accomplish the object actionable, no cause of action exists. They also maintain that this case falls within the rule asserted by them, the contention being that it was not unlawful for them, as competitors, to conspire to obtain the business which the plaintiffs had, thereby breaking plaintiffs up in business, unless in so doing they committed wrongs which were actionable in and of themselves, which they assert the plaintiffs' petition fails to show; and they rely upon the case of Delz v. Winfree, 80 Texas, 400, as supporting their contention.

"Under the second cross-assignment of error, appellees complain of

the action of the court in overruling special exceptions to paragraphs numbers 9, 9b, 10, 10b, 11, 12, 13, 14b, 15, 16, 17, 18, and 19, by which exceptions they pleaded the one year statute of limitations as to the matters complained of in said paragraphs of the petition.

"As to the questions certified, and showing that they are properly presented for decision, reference is here made to the first seven pages of appellees' brief on their cross-assignments of error.

"With the foregoing statement and explanation, the Court of Civil Appeals of the Third District certifies to the Supreme Court for decision the following questions:

"1.  Eliminating the sixth, seventh and twenty-third paragraphs of the plaintiffs' petition, to which paragraphs the court sustained exceptions, does the petition state a cause of action against the defendants, and did the trial court err in overruling the defendants' demurrer thereto, as charged in the first cross-assignment of error?

"2.  If the petition states a cause of action, does the one year statute of limitations apply to the case, and did the trial court err in overruling the special exceptions referred to in the second cross-assignment of error?"

We answer that the plaintiffs' petition states a good cause of action against each of the defendants and the demurrer was properly overruled.

The allegations which charge a conspiracy between the defendants to perpetrate the wrong set up in the petition are immaterial in this case, for the reason that the petition charges that each defendant, with the purpose to accomplish the injury to plaintiffs, participated by performing jointly and individually the various acts which caused injury to the plaintiffs; that the acts done separately by each was for the purpose of accomplishing the aim of all and contributed thereto, and if the facts alleged show a right of action then the defendants are liable jointly and severally for the injury produced by their acts, whether performed jointly or severally.  15 Enc. of Pl. and Prac., 558; Cooley on Torts, 145.

Appellees contend that it was lawful for them to break the appellants up in their business and to run them out of business "by lawful means." We agree to that proposition as being correct, even if it be true that the parties thus acting by lawful means were actuated by malice.  If, for instance, the appellees, in the transaction of the business of lending in competition with appellants, had offered money for loan at a rate below that which the appellants could furnish it and thereby induced the customers of the appellants to borrow from the defendant company, and by reason thereof Brown Bros. were unable to maintain their business and were broken up and compelled to quit, then no cause of action would exist in favor of the appellants against the defendants, because, however malicious the motive, the means used would be lawful.  But the facts alleged do not make such a case; for instance, it is alleged against

all of the defendants that "on divers occasions and in the presence of different people in the city of Waco, Texas, and in other parts of McLennan County, Texas, they stated in substance that plaintiffs had done a bad business for the defendant company, which, in consequence thereof, had taken its business from plaintiffs, and that plaintiffs had been inattentive and neglectful of its business, and had conducted it in a way very unsatisfactory and unprofitable to defendant company, and had been guilty of fraudulent conduct as such agents; and further, in said McLennan County at various times and in Austin at various times in the fall of 1898 and 1899 and in the spring of 1900, made other statements to the effect that the plaintiffs were financially insolvent and irresponsible, and that they would make them bankrupt when they liked, and that the plaintiffs were going out of business, and that plaintiffs had been guilty of fraudulent conduct as agents." There are numerous charges of like character against the defendants in the petition, which enters minutely and elaborately into a statement of the various acts and statements of the several defendants done and made for the accomplishment of the purpose charged, of breaking them up and driving them out of business. It can not be said that it is fair competition to deal with a competitor in the manner shown by the facts alleged in this petition, for if the facts be true, and we must take them as such in this investigation, they manifest wicked persecution of the appellants by the defendant company, through its agents and officers, with the purpose of destroying appellants' business and of securing the benefits to defendant company which legitimately belonged to Brown Bros. It can hardly be said that the purpose of breaking a man down in business and driving him out of business is a lawful purpose, even when accomplished by lawful means. The best that can be said of such transaction is, that the law affords no remedy for such wrong.

In Delz v. Winfree, 80 Texas, 400, this court quoted from Walker v. Cronin, 107 Mass., 562, as follows: "Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition, but he has a right to be free from a malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing." If the allegations of the petition in this case be true, it was not a matter of competition on the part of the defendant company and its agents, but a malicious pursuit of appellants by means wholly without justification in law or morals; therefore, having produced the wrong as charged in the petition, the defendants may be justly held liable for the damage occasioned by the destruction of the business which the plaintiffs by their

energy and care had built up for themselves.  Delz v. Winfree, before cited.

The cause of action alleged by the plaintiffs and upon which they sought recovery is, the destruction of their business as loan agents by the unlawful and malicious acts of the defendants.  The various acts which are charged in the petition—for instance, the representation that plaintiffs were dishonest and unreliable and that they were bankrupt and insolvent—were simply allegations showing the methods by which the defendants accomplished the purpose of destroying their business.  It was not sought to recover upon the allegations constituting libel or slander, but the facts stated were the evidence by which the cause of action would be established.  The statute of limitations of one year does not apply to the cause of action set up in this case.